**ROBINSON BROG LEINWAND GREENE**
**GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
Telephone No.: 212-603-6300
A. Mitchell Greene
Proposed Attorneys for the Debtor and Debtor in
Possession

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

In re:                                                    Chapter 11

ADELPHI ACADEMY
D/B/A ADELPHI ACADEMY OF BROOKLYN,          Case No.

                                     Debtor.
-----------------------------------------------------------------

**DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363**
**AND 364 FOR INTERIM AND FINAL FINANCING ORDERS (I) AUTHORIZING**
**DEBTOR TO OBTAIN POST-PETITION FINANCING SECURED BY A SENIOR LIEN**
**UNDER SECTION 364(c)(1) AND 364(d) OF THE BANKRUPTCY CODE AND UTILIZE**
**CASH COLLATERAL, (II) MODIFYING THE AUTOMATIC STAY, AND (III)**
**SCHEDULING**
**A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND (C)**

Adelphi Academy d/b/a Adelphi Academy of Brooklyn, as debtor and debtor-in-

possession (the "Debtor"), respectfully represents:

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  Venue of

this proceeding is proper pursuant to 28 U.S.C. § 1409. This is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory predicates for the relief requested herein are Sections 105, 361, 362,

363 and 364 of the Bankruptcy Code and Rule 4001 of the Federal Rules of Bankruptcy

Procedure.

## BACKGROUND

3.      The Debtor filed a voluntary petition for relief under Chapter 11 of the

Bankruptcy Code on June 16, 2014 (the "Petition Date").

4.      The Debtor has continued in possession of its property and the operation and

management of its business as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of

the Bankruptcy Code.

5.      No trustee or examiner, and no official committee has been appointed in the

Debtor's case.

6.      The Debtor operates a not-for-profit, 501(c)(3), private and independent school

from property it owns at 8515 Ridge Boulevard in Bay Ridge, Brooklyn (the "Property").  The

Debtor currently enrolls approximately 100 students from Pre-Kindergarten through 12th grade.

7.      The Debtor owns the property located at 8515 Ridge Boulevard in Bay Ridge

Brooklyn, which is a 5 story building from which the Debtor operates its school (the "Property").

The Property houses 5 floors of offices, classrooms and labs, a basement floor containing a

cafeteria and a library of over 20,000 volumes and a gymnasium.

8.      Prior to the Petition Date, the Debtor was a defendant to a foreclosure action

commenced by Metropolitan National Bank ("Metropolitan"), the holder of a mortgage on the

Property and a first lien on all of the Debtor's assets.  While the Debtor disputed and continues to

dispute the purported technical default that resulted in the commencement of the foreclosure

proceeding by Metropolitan, the resulting negative publicity significantly impacted the Debtor's

reputation and resources and despite continued efforts, its student enrollment declined.  Because

of the reduced enrollment and depletion of resources, the Debtor encountered financial

difficulties and cash flow shortfalls and has been unable to operate profitably.

**Capital Structure.**

8.      As set forth above, the Debtor owns the Property from which it operates its business, a private school.  The Property is encumbered by a mortgage held by Metropolitan securing a claim evidenced by a note in the amount of approximately $6.2 million, which mortgage is the subject of a pending foreclosure action.

**Relief Requested**

9.      By this Motion, the Debtor respectfully requests, pursuant to Sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), the entry of interim and final orders for the, *inter alia*:

(a) authorization, under sections 364(c)(1) and 364(d) of title 11 of the United States Code, and Rule 4001 of the Federal Rules of Bankruptcy Procedure, for the Debtor to obtain postpetition financing (the "Postpetition Financing") in the form of a credit facility up to a maximum outstanding principal amount of $750,000 (the "Total Facility"), in accordance with the commitment letter, among the Debtor, as borrower, and Titan Capital ID, LLC as lender (the "Lender" or "Titan"), substantially in the form of Exhibit "A" annexed to the Motion, the Interim Order, the final order authorizing the Postpetition Financing (the "Final Financing Order") and all other agreements, documents and instruments at any time evidencing, guaranteeing or securing the Obligations[1] or the Collateral (as defined hereinafter) (collectively, the "Loan Documents");

(b) authorization to grant to the Lender assurances for the full and timely payment by and performance of the Obligations of the Debtor to the Lender in connection with such Interim Financing and Final Financing under the commitment letter, including, without limitation, all principal, interest, costs, fees and expenses, all as set forth in the Loan Documents, by granting to the Lender (i) pursuant to section 364(c)(1) of the Bankruptcy Code, an administrative expense claim allowable under section 503(b) of the Bankruptcy Code having priority over any and all expenses and claims specified in any other section of the Bankruptcy Code, including, without limitation, sections 503(b) and 507(b) of the Bankruptcy Code, subject only to the Carve Out as defined herein and the fees payable to the Office of the United States Trustee; and (ii) pursuant to sections 364(d) of the Bankruptcy Code, a first priority senior security interest in and lien on all of the Debtor's assets, subject to the Carve Out, all as set forth in the Loan Documents;

---

[1]      All terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Commitment Letter and the Loan Documents, which will be provided.

(c) scheduling and approving the form and method of notice of the Final Hearing.

**The Debtor's Efforts to Obtain Financing.**

10.    The Debtor does not currently have any available sources of funds other than the Cash Collateral of Metropolitan and the proposed post-petition financing (the "DIP Financing") to carry on the operation of its business. The Debtor urgently requires working capital to continue its operations including, for expenses and costs for completing the school term and to maintain its planned summer school, camp and other programs and activities.  The Debtor is not able to operate its school at full capacity.  The Debtor's ability to operate on a going forward basis, to secure and maintain its relationships with its students and staff, and to rehabilitate its business relationships with its vendors and suppliers is dependent on its ability to obtain the funds made available under the DIP Financing.

11.    Any potential disruption of the Debtor's operations would be devastating just prior to the conclusion of the school term.  The inability of the Debtor to obtain sufficient liquidity and to make payments, especially its payroll obligations, on a timely basis may result in a permanent and irreplaceable loss of staff, resulting in further reduced enrollment and causing a loss of value, to the detriment of the Debtor and all parties in interest.  In light of the foregoing, the Debtor has determined, in the exercise of its sound business judgment, that a post-petition credit facility, which permits the Debtor to obtain up to $750,000 in financing, and to use such credit to finance the operation of its business, is critical to its ongoing operations.

12.    Prior to the Petition Date, the Debtor surveyed various sources of financing and was unable to procure terms more favorable than those proposed by Titan.[2]  The Debtor concluded that the debtor in possession financing offered by Titan presented the best and most

---

[2] While not included in this instant application, Titan is amenable to extend exit financing to the Debtor at the conclusion of the Debtor's case, which additional financing, will be vital to the Debtor's ability to propose a feasible plan of reorganization.

practical option available and would enable the Debtor to preserve its value as a going concern.

The Debtor submits that the proposal received from the Lender is competitive and addresses the

Debtor's working capital and liquidity needs, and, that the value of the Property is substantially

more than the aggregate of Metropolitan's pre-petition claim and the proposed DIP Financing,

thereby adequately protecting Metropolitan and the Lender.

### Debtor in Possession Credit Agreement

13.     Prior to the Petition Date, the Debtor engaged in good-faith and extensive, arm's-

length negotiations with the Titan.  These negotiations culminated in a letter agreement by Titan

to provide post-petition financing on the terms and subject to the conditions to be set forth in the

final Loan Documents and the Interim Order. A copy of the proposed form of Interim Order is

annexed hereto as Exhibit "B".   Additionally a proposed form of the Final Financing Order is

annexed hereto as Exhibit "C".

14.     The significant elements of the DIP Financing[3] and the proposed Interim and

Final Financing Orders, are as follows:

(a) **Debtor**. Adelphi Academy of Brooklyn

(b) **Commitment and Availability.** The Debtor in Possession Credit Agreement
provides for an available credit facility of $750,000 in the aggregate

(c) **Term.**  Twelve months.

(d) **Purpose**.  To fund operations as set forth in the proposed budget attached
hereto as Exhibit "D".

(e) **Priority and Liens**.  Pursuant to Sections 364(d) of the Bankruptcy Code, all
of the Obligations shall be secured by a first priority priming lien on the Property and a perfected
first priority security interest in all personal property and/or equipment used in connection with
the Property, subject to the Carve Out.

(f) **Super-priority Claim**. The Debtor has agreed to grant the Lender an allowed
superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, which
claim will have priority in right of payment over any and all other obligations, liabilities and

---

3  This summary is qualified in its entirety by reference to the provisions of the Loan Documents.

indebtedness of Debtor, now in existence or hereafter incurred by the Debtor and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1) and/or 726 of the Bankruptcy Code (the "Superpriority Claim"), provided, however, that the Superpriority Claim will be subordinate to (i) the Carve-Out and (ii) the fees payable to the United States Trustee, as set forth in the Interim Order.

(g) **Carve Out Expenses**. All amounts payable to the Office of the United States Trustee pursuant to 28 U.S.C. Section 1930(a) and amounts awarded to counsel to the Debtor for professional fees and expenses under sections 330 and 331 of the Bankruptcy Code up to a maximum of $50,000.

(h) **Interest Rate.** The interest rate on the outstanding obligations shall be 12%.

(i) **Negative Covenants.** No additional senior or secondary financing will be permitted during the term of the loan, either secured or unsecured.

### The Proposed DIP Financing Arrangement Should be Authorized

15.     The Debtor's ability to meet its working capital needs and avail itself of the opportunity to reorganize its business can be satisfied only if the Debtor is authorized to borrow up to $750,000 under the commitment letter and to use such proceeds to fund the operations of the Debtor.

16.     The credit provided under the commitment letter will enable the Debtor to continue its operations, continue monthly payments on its existing obligations, pay its employees, vendors, and suppliers, and operate its business in an orderly and reasonable manner to preserve and enhance the value of its assets and enterprise for the benefit of all parties in interest. Moreover, the availability of credit under the commitment letter will provide students who are already enrolled and students who are contemplating enrollment, employees, vendors, and suppliers and other parties with confidence in the Debtor that will enable and encourage them to resume ongoing relationships with the Debtor. Finally, the implementation of the commitment letter will be viewed favorably by the Debtor's employees, current and prospective students and outside parties and thereby help promote the Debtor's successful reorganization.

### Approval Under Section 364(d) of the Bankruptcy Code.

17.     The Debtor proposes to obtain financing under the Debtor in Possession Credit Agreement by providing security interests and liens as set forth above pursuant to Section 364(d) of the Bankruptcy Code. The statutory requirement for obtaining post-petition credit under Section 364(d) is a finding, made after notice and hearing, that the debtor is "unable to obtain such credit otherwise and there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."

18.     The Debtor bears the burden of proof on the issue of adequate protection with respect to the lien which is being primed.

### The Debtor Does Not Have An Alternative to the DIP Facility.

19.     As will be shown at the Interim Hearing, a working capital facility of the type needed in this case could not have been obtained on an unsecured basis or on a secured basis without the imposition of a priming lien.  Alternative sources of proposed DIP Financing for the Debtor, obtainable on an expedited basis and on reasonable terms, were extremely limited.  None of the alternative potential sources of post-petition financing proposed a facility that would meet the Debtor's working capital requirements. In these circumstances, "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986).

20.     A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of Section 364(c) and (d). *Id.*; *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Where there are few lenders likely to be able and willing to extend the necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd*, 99 B.R. 117 (N.D. Ga. 1989). Thus, the evidence introduced at the Interim Hearing will satisfy the requirement of Section

364(c) of the Bankruptcy Code that alternative credit on more favorable terms was unavailable to the Debtor.

21.     Further, the Property, which is the Debtor's most valuable asset is worth approximately $15 million.  Metropolitan, the pre-petition secured creditor, holds a claim in the principal amount of $5.9 million (which claim has purportedly increased with the calculation of default interest to approximately $6.2 million).  Metropolitan is therefore considerably oversecured and adequately protected by the $15 million estimated value of the Property and will not be harmed by the imposition of a priming lien in favor of the Lender.

### Application of the Business Judgment Standard.

22.     As described above, after appropriate investigation and analysis and given the exigencies of the circumstances, the Debtor's management has concluded that the DIP Financing is the only alternative available in the circumstances of this case. Bankruptcy courts routinely defer to the debtor's business judgment on most business decisions, including the decision to borrow money. *See Group of Institutional Investors v. Chicago Mil. St. P. & Pac. Ry.*, 318 U.S. 523, 550 (1943); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Lifeguard Indus., Inc.* 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983) (same). "More exacting scrutiny would slow the administration of the debtor's estate and increase its costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

23.     In general, a bankruptcy court should defer to a debtor's business judgment regarding the need for and the proposed use of funds, unless such decision is arbitrary and capricious. *In re Curlew Valley Assoc.*, 14 B.R. 506, 511-13 (Bankr. D. Utah 1981). Courts

generally will not second-guess a debtor's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of [its] authority under the Code." *Id*. at 513-14 (footnotes omitted).

24.    The Debtor has exercised sound business judgment in determining that a post-Petition credit facility is appropriate and has satisfied the legal prerequisites to borrow under the DIP Financing. The terms of the DIP Financing are fair and reasonable and are in the best interests of the Debtor's estate. Accordingly, the Debtor should be granted authority to enter into the DIP Financing and borrow funds from the Lender on the secured, administrative superpriority basis described above, pursuant to Sections 364(c)(1) and 364(d) of the Bankruptcy Code, and take the other actions contemplated by the commitment letter and as requested herein.

25.    Without the liquidity provided by the DIP Financing, the Debtor will be unable to pay suppliers, employees, and other constituencies that are essential to the orderly operation of its business. The Debtor's board has exercised its best business judgment in negotiating the DIP Financing that is presently before the Court.

## The DIP Facility is Necessary to Effectively Preserve the Assets of the Debtor's Estate and to Operate Its Business

26.    No party in interest can seriously contend that the Debtor does not need immediate access to a working capital facility. As with most other businesses, the Debtor has significant cash needs. Accordingly, access to credit is necessary to meet the day-to-day costs associated with maintaining business relationships with the Debtor's vendors and suppliers, and otherwise financing their operations. Moreover, maintaining relationships with current and prospective students is vital to the Debtor's success as without sufficient student enrollment, the Debtor will not succeed.  Access to sufficient cash is therefore critical to the Debtor. In the absence of immediate access to cash and credit, the Debtor's suppliers will refuse to sell critical supplies and services to the Debtor, and the Debtor will be unable to operate its business. The

inability of the Debtor to meet its ongoing obligations would negatively impact the level of service it must provide to its students.  Students by their tuition payments fund the majority of the Debtor's business operations. If they elect not to enroll or reenroll with the Debtor, there will be irreparable harm to the Debtor's prospects for reorganization.  Maintaining the same level of service to its students is critical for the Debtor to survive.

27.    For these reasons, access to credit under the DIP Financing is critical. The Debtor cannot wait for the beneficial effects of the DIP Financing; any substantial delay could have the same impact as denial of the Motion. The Debtor's need for access to the DIP Financing therefore is immediate.

### The Terms of the DIP Facility Are Fair, Reasonable, and Appropriate and provide Adequate Protection to Existing Lienholders.

28.    The Debtor is unable to obtain unsecured credit allowable solely as an administrative expense. The Debtor is also unable to secure secured credit without offering to the Lender a senior lien on the Property and first priority security interests in the Collateral.  The Debtor submits that proposed DIP Financing reflects the exercise of sound and prudent business judgment. The Debtor would not have been able to obtain financing on an unsecured basis, or otherwise and the prospect of Lender's provision of exit financing provides the Debtor with assurance that it will be able to effectively and expeditiously reorganize in a manner that will be in the best interest of the Debtor's estate and its creditors. In the Debtor's business judgment, the DIP Financing is the best financing option available under the circumstances in this case.

29.    The proposed terms of the DIP Financing are fair, reasonable and adequate in that these terms neither (a) tilt the conduct of this case and prejudice the powers and rights that the Bankruptcy Code confers for the benefit of all creditors, nor (b) prevent motions by parties in interest from being decided on their merits. The purpose of the DIP Financing is to enable the Debtor to meet ongoing operational expenses.

30.     The proposed DIP Financing provides that the security interests and administrative expense claims granted to the DIP Lender are subject to the Carve-Out. The bankruptcy court in *In re Ames Dep't Stores*, 115 B.R. 346 (Bankr. S.D.N.Y. 1990), found that such "carve-outs" are not only reasonable, but are necessary to insure that official committees and the debtor's estate will be assured of the assistance of counsel. *Id*. at 40.

31.     Likewise, the various fees and charges required by the Lender under the DIP Financing are reasonable and appropriate under the circumstances. Indeed, courts routinely authorize similar lender incentives beyond the explicit liens and other rights specified in Section 364 of the Bankruptcy Code. *See In re Defender Drug Stores, Inc*., 145 B.R. 312, 316 (9th Cir. BAP 1992) (authorizing credit arrangement under Section 364, including a lender "enhancement fee").

32.     By this application the Debtor also seeks approval of a broker fee as set forth in the commitment letter and the broker agreement, attached as Exhibit "E".  The Debtor submits that the commission is fair and reasonable and should be approved.

33.     The terms and conditions of the Debtor in Possession Credit Agreement are fair and reasonable, and were negotiated by the parties in good faith and at arm's length. Accordingly, the DIP Lender under the Debtor in Possession Credit Agreement should be accorded the benefits of Section 364(e) of the Bankruptcy Code in respect of such agreement.

34.     The fairness and reasonableness of the terms of the DIP Financing will be further shown at the Interim and Final Hearings.

**Request for Immediate Interim Relief.**

35.     It is essential that the Debtor immediately stabilize its operations and be able to pay its ordinary, post-petition operating expenses to minimize the damage occasioned by their cash flow problems.  Absent immediate and financing, the Debtor will be unable to pay these

ongoing operational expenses. Consequently, if interim relief is not obtained, the Debtor's assets will be immediately and irreparably jeopardized, to the detriment of its estate, its creditors, students and other parties in interest.

36.    Accordingly, the Debtor requests that, pending the Final Hearing, the Court schedule an emergency Interim Hearing to consider the Debtor's request for authorization to use cash collateral and obtain interim credit in an amount up to $750,000 under the DIP Financing, in accordance with and pursuant to the terms and conditions contained in the commitment letter and the Interim Order.  Specifically, on an emergency basis, the Debtor requests authority to obtain financing up to $60,000, in accordance with the budget attached as Exhibit "D".

37.    Bankruptcy Rules 4001(b) and 4001(c) permit a court to approve a debtor's request for financing during the 14-day period following the filing of a motion requesting authorization to obtain post-petition financing, "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Bankruptcy Rule 4001(c)(2). In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decisions. *See, e.g., In re Simasko Prod. Co.*, 47 B.R. at 449; *see also In re Ames Dep't Stores*, 115 B.R. at 38. After the 14-day period, the request for financing is not limited to those amounts necessary to prevent destruction of the debtor's business. A debtor is entitled to borrow those amounts that it believes prudent in the operation of its business. *See, e.g., In re Simasko Prod. Co.*, 47 B.R. at 449; *In re Ames Dep't Stores*, 115 B.R. at 36.

## Notice

38.    Pursuant to Sections 102(1), 363(c), and 364(c) of the Bankruptcy Code and Bankruptcy Rules 4001(b) and (c), notice of this Motion has been provided via overnight delivery service to the Lender, the Debtor's secured creditors, the Debtor's 20 largest unsecured

creditors, the Office of the United States Trustee, and all parties having filed notices of appearance.

39.     The Debtor will, within three (3) business days of the entry of the Interim Order by the Court, serve by United States mail, first class postage prepaid, copies of this Motion, the Interim Order and a notice of the Final Hearing (the "Final Hearing Notice") to consider entry of the proposed Final Financing Order on: the Office of the United States Trustee, the lender, the Debtor's secured creditors, the Debtor's 20 largest unsecured creditors, all parties having filed notices of appearance, and any other parties as directed by the Court.

**WHEREFORE**, the Debtor respectfully requests that the Court: (a) enter the Interim Order and set the date for the final hearing; (b) enter the Final Financing Order; and (c) grant the Debtor such other and further relief as is just and proper.


Dated:  New York, New York　　　　　ROBINSON BROG LEINWAND
      June 16, 2014　　　　　　　　GREENE GENOVESE & GLUCK  P.C.


                    By:　　/s/ A. Mitchell Greene
                          A. Mitchell Greene
                          875 Third Ave, 9th Floor
                          New York, NY  10022-0123
                          (212) 603-6300
                          amg@robinsonbrog.com
                          *Proposed Attorneys for Debtor*